CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 14 2005
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:05CR00016 |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| GREGORY ADAM NEWTON, | ) | |
| | ) | |
| | ) | By: B. WAUGH CRIGLER |
| Defendant, | ) | U.S. MAGISTRATE JUDGE |

In accordance with the provisions of Title 28 U.S.C. § 636(b)(3) and upon the defendant's consent, this case was referred to the undersigned to conduct a plea hearing.

**DEFENDANT'S RESPONSES TO RULE 11 INQUIRY**

The Grand Jury has returned a multiple count Indictment charging defendant in Count One with knowingly and intentionally combining, conspiring, confederating, and agreeing, with other persons known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with intent to distribute, 50 grams, or more, of mixtures and substances containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a), all in violation of 21 U.S.C. § 846; in Count Ten with aiding and abetting others, knowingly and intentionally distributing a mixture and substance containing a detectable amount of cocaine base, also known as crack cocaine, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and in Count Eleven with knowingly possessing a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, as charged in Count Ten[1], all in violation of 18 U.S.C. § 924(c)(1).

---

[1] The plea agreement does not specifically address Count Ten.

On September 7, 2005, a plea hearing was conducted before the undersigned, and the defendant entered a plea of guilty to Counts One and Eleven of the Indictment pursuant to a plea agreement between defendant and the government. The government has agreed to dismiss the remaining counts of the Indictment upon acceptance of the defendant's plea to Counts One and Eleven.

At this hearing the defendant was placed under oath and testified that his full legal name is Gregory Adam Newton, that he was born on August 23, 1983, and that he completed the ninth grade in high school. The defendant stated that he can read, write, and understand the English language. The defendant stated that he was fully aware of the nature of the charges against him and the consequence of pleading guilty to those charges. The defendant further testified that he was not under the influence of alcohol, medicine, or any drug. Defendant stated that he had no other physical or mental condition which impaired his ability to understand the nature of the proceedings being held. Defendant's counsel stated that he had no reservations as to the defendant's competency to enter a plea of guilty to the offenses.

The defendant testified that he had received a copy of the Indictment pending against him and that he had fully discussed the charges therein, and his case in general, with his counsel. He also testified that he had read the plea agreement in its entirety and had discussed the plea agreement with his counsel before signing the agreement. He stated that he understood the terms of the agreement and that the document presented to the court set forth his agreement with the government in its entirety. The defendant specifically testified that he understood that under the terms of the agreement he was waiving any right to appeal or to collaterally attack his conviction or sentence and that he was waiving his right to have a jury determine beyond a reasonable doubt the facts alleged

in Counts One and Eleven, including any facts related to sentencing.

The defendant stated that he was pleading guilty of his own free will because he was, in fact, guilty of the offenses charged. The defendant also stated that no one had made any promises other than those contained in his agreement with the government, or made any assurances or threats to him in an effort to induce his plea. The defendant testified that he understood that the offenses with which he is charged in Counts One and Eleven are felonies and that, if his plea is accepted, he will be adjudged guilty of those offenses. Moreover, the defendant testified that he understood that he will be required to pay a mandatory assessment of $100 for each felony count and that, at the discretion of the court, he may also be denied federal benefits, as that term is defined in 21 U.S.C. § 862(a), for a period of years or indefinitely, as set forth in the plea agreement. The defendant acknowledged that he consented to the administrative forfeiture, official use and/or destruction of any illegal firearms or contraband seized by any law enforcement agency from his possession or from his direct or indirect control. The defendant further acknowledged that he consented to forfeit any right, title and interest he has in assets purchased with proceeds of his illegal activity, directly or indirectly. The defendant stated that he understood that he must submit to the government a complete and truthful financial statement revealing all his assets and liabilities on a form provided by the government within 30 days of the date of the plea agreement. The defendant stated that he was waiving his right to raise the defense of the statute of limitations if for any reason the plea agreement is withdrawn or otherwise not consummated. The defendant also testified that he was waiving all rights under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act, 5 U.S.C. § 552a, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of his case.

The defendant was informed that the maximum possible penalty provided by law for the offenses with which he is charged is, in the case of Count One, is life imprisonment and a fine of $4,000,000, together with supervised release. The defendant was further informed that the minimum mandatory sentence for Count One is ten years imprisonment. The defendant was also informed that the maximum possible penalty provided by law for the offense with which he is charged, in Count Eleven is life imprisonment and a fine of $250,000, together with supervised release. The defendant was informed that the minimum mandatory sentence for Count Eleven is five years imprisonment. The defendant was also informed that the sentence imposed in Count Eleven must run consecutive to the sentence imposed in Count One. The defendant was informed that under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. The defendant was then informed that, in light of the United States Supreme Court's decision in *United States v. Booker*, 125 S.Ct. 738 (2005), the sentencing guidelines are no longer mandatory but that the sentencing judge may apply them in an advisory fashion in determining a reasonable sentence. The defendant testified that he and his counsel had discussed how the sentencing guidelines might apply in his case. The defendant also testified that he understood that the court would not be able to determine the applicable guideline range, for advisory purposes, until after a presentence report has been prepared and both parties have been given an opportunity to challenge the reported facts and application of the guidelines. He stated that he understood that the eventual sentence imposed may be different from any estimate his attorney had given him and that the court has the authority to impose a sentence that is either higher or lower than that called for by the guidelines, so long as the sentence is not greater than the statutory maximum for the offenses to which the defendant is pleading guilty.

The defendant stated that he understood that, contingent upon his acceptance of responsibility and continued cooperation in the sentencing process, and fulfillment of his duties under the plea agreement, the government will recommend a three-level (3) reduction under USSG § 3E1.1(a) for acceptance of responsibility. The defendant also stated that he understood that the government is under no obligation to file a motion for substantial assistance, but that to the extent the government does exercise such discretion in this regard, he must provide such assistance in a manner set forth in the plea agreement. The defendant further stated that he understood that the government will not seek a sentence higher than the guidelines would recommend to the court. The defendant stated that he knew that parole had been abolished and that if he is sentenced to prison he will not be released on parole but on supervised release, a violation of which could result in additional incarceration.

The defendant testified that he understood that he had the right to a trial by a jury, in addition to the following rights, which will be waived or given up if his guilty plea is accepted:

1. The right to plead not guilty to any offense charged against him;
2. The right at trial to be presumed innocent and to force the government to prove his guilt beyond a reasonable doubt;
3. The right of assistance of counsel at trial and in any subsequent appeal;
4. The right to see, hear and cross-examine witnesses;
5. The right to call witnesses to testify in his own behalf and to the issuance of subpoenas or compulsory process to compel the attendance of witnesses;
6. The right to decline to testify unless he voluntarily elects to do so in his own defense;
7. The right to a unanimous guilty verdict; and
8. The right to appeal a guilty verdict.

The defendant also testified that he understood that if he is adjudged guilty of these charges, he may be deprived of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess a firearm.

5

The defendant stated that he was fully satisfied with the advice and representation given to him in this case by his counsel. The defendant also stated that he believed his counsel's representation had been effective. The defendant testified that he understood the possible consequences of his plea and the consequences of breaching any term of the plea agreement. The defendant asked the court to accept his plea of guilty to Counts One and Eleven of the Indictment.

**THE GOVERNMENT'S EVIDENCE**

The defendant waived his right to have the government's Factual Summary read in open court and had no objection to the Summary. The Factual Summary having been filed in open court, the evidence presented therein regarding the offenses charged is as follows:

Had the case gone to trial, the United States would have adduced evidence establishing that the defendant committed acts that constitute a violation of Counts One and Eleven of the Indictment, violations of 21 U.S.C. § 846 and 18 U.S.C. § 924(c). Specifically, the evidence would have shown that defendant was willingly and knowingly part of a group of people that sold crack cocaine in the Western District of Virginia during the period set forth in the Indictment.

The government's evidence would have shown defendant to have been a crack cocaine dealer from North Carolina who was identified after he contacted a Northwest Virginia Regional Drug Task Force (NWVRDTF) Confidential Informant (CI) in an attempt to acquire a Glock pistol. On January 2, 2005, the ATF and NWVRDTF used the CI to conduct a controlled trade of crack cocaine for a Glock 9mm pistol from the Warren County Sheriff's Office. Soon thereafter, the Warren County Tactical Team executed a search warrant at defendant's residence and recovered the Glock pistol and crack cocaine. The defendant and Dennis Mitchel were arrested without incident. Mitchel was arrested for facilitating the exchange of crack cocaine for the Glock pistol and being a felon in possession of a

firearm. The defendant was arrested for trading crack cocaine for the Glock pistol and being a felon in possession of a firearm.

A government witness would have testified that she met defendant in the summer of 2004, and at that time, defendant was selling crack cocaine for James Graham. The witness would have testified that she purchased crack cocaine from defendant on several occasions. On those occasions, the witness paid Graham but received the crack cocaine from the defendant.

Mitchel stated in an interview that in May 2004, he met defendant in Front Royal, Virginia, through Graham. Mitchel further stated that shortly thereafter he began assisting Graham and the defendant distributing approximately 2 ounces of "crack" cocaine per week in Front Royal, Virginia. In approximately November 2004, defendant went back to Charlotte, North Carolina. Shortly thereafter, defendant came back to Front Royal and distributed approximately 1 to 1 ½ ounces of crack cocaine in the Front Royal, Virginia area. At that time, Mitchel began distributing crack cocaine supplied by defendant. Mitchel stated that on average, defendant sold approximately 2 ounces of crack cocaine per week; however, he once observed defendant sell approximately 4 ounces of crack cocaine in 3 days.

John Jackson stated in an interview that defendant originally sold crack cocaine for Graham before beginning to work independent of Graham. Jackson stated that he was aware from personal experience and observation that Mitchel assisted Newton in the distribution of crack cocaine in Front Royal, Virginia.

Another government witness would have testified that he met the defendant at the residence of Charles Henry in approximately October 2004. This witness purchased crack cocaine from the defendant on several occasions in Front Royal, Virginia. During one occasion, he observed the

defendant in possession of approximately one ounce of crack cocaine. The last time he purchased crack cocaine from the defendant was in November 2004.

Lastly, the government would have proved beyond a reasonable doubt that it was reasonable and foreseeable to the defendant that the conspiracy charged in Count One involved more than 50 grams of crack cocaine, and that defendant had no applicable defense to this charge.

**FINDINGS OF FACT**

Based on the evidence presented at the plea hearing, the undersigned now submits the following formal findings of fact, conclusions and recommendations:

1. The defendant is fully competent and capable of entering an informed plea;

2. The defendant is aware of the nature of the charges and the consequences of his plea;

3. The defendant knowingly and voluntarily entered a plea of guilty to Counts One and Eleven of the Indictment; and

4. The evidence presents an independent basis in fact containing each of the essential elements of the offenses to which the defendant is pleading guilty.

**RECOMMENDED DISPOSITION**

Based upon the above findings of fact, the undersigned RECOMMENDS that the court accept the defendant's plea of guilty to Counts One and Eleven, adjudge him guilty of those offenses. The undersigned further DIRECTS that a presentence report be prepared and RECOMMENDS that the presiding District Judge defer acceptance of the plea agreement until after that report has been

submitted to the Court. A sentencing hearing hereby is scheduled for November 21, 2005 at 9:30 a.m. before the presiding District Judge in Harrisonburg.

**NOTICE TO PARTIES**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C): Within ten days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. The presiding District Judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. The presiding District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the undersigned. The judge may also receive further evidence or recommit the matter to the undersigned with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 10 days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the presiding United States District Judge.

The Clerk is hereby directed to send certified copies of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
United States Magistrate Judge

9/14/05
Date